130 P.2d 1032

**LUSK v. FIRST NAT. BANK OF CARRIZOZO et al.**

No. 4683.

Supreme Court of New Mexico.

Sept. 23, 1942.

Rehearing Denied Dec. 2, 1942.

Harold Hurd, of Roswell, for appellant.

John E. Hall, of Carrizozo, for appellees.

MABRY, Justice.

Belle Lusk as contestant (appellant here) filed in the state land office at Santa Fe her petition to contest and have cancelled a certain grazing lease covering Sec. 16, Township 4, S. of Range 13, E., N.M.P.M., State Lands, naming the First National Bank of Carrizozo as contestee. Contestant sought a cancellation of the lease between the state land Commissioner and appellee upon the ground that appellee, as such lessee, had violated the terms of its lease by subleasing to one Barney W. Wilson, who in turn, it was alleged, had subleased to one Jim Hall.

Appellee bank, contestee, answered denying that the land covered by the lease in question had ever been sublet, but claimed that the lease, which had been originally executed in 1924, and renewed at the end of five-year periods, and still held in the name of appellee bank was to be assigned and released to the said Wilson; that the said Wilson had contracted to purchase certain lands from appellee and that he had the use of said section 16, the land in question, which adjoins lands of Wilson for which he was paying only the rental required by the state land office under the lease to appellee, and that he had the promise of appellee that assignment thereof would be made by it to the said Wilson when all indebtedness due upon other accounts had been paid and satisfied; that there never had been and was not then any kind of leasing of the section in question.

At the same time the said Barney W. Wilson, under an order permitting, intervened in said cause joining with the said bank in its defense of the lease. The petitioner in intervention denied that he had ever subleased from the bank the land in question or that he had ever contracted with the said Jim Hall or any other person regarding subleasing the land himself; both appellee, First National Bank and Barney W. Wilson, intervener, took the

position that the bank, through a deal in which it sold some of its own lands to the said Wilson, but which were not yet paid for, would, when such lands were paid for release and assign over to the said Wilson all of its right, title and interest in and to the lease in question covering section 16; that while the bank held legal title to the lease, the beneficial title was in Wilson, who had the use thereof pending final payment by him to the bank upon the obligation owing it, and who would, when full payment by him should be made, receive an assignment of the lease and a release of claim by the bank, which the law permits.

The contest was heard by the Commissioner and the lease in question was cancelled upon the ground that there had been a subleasing in violation of the terms of the lease agreement. The contest proceeding was filed under § 132-181 N.M.Stat. Ann.Comp.1929, which reads as follows:

"Contests—Rules. Any person, association of persons, or corporation claiming any right, title, interest or priority of claim, in or to any state lands, covered by any lease, contract, grant or any other instrument executed by the commissioner, shall have the right to initiate a contest before the commissioner who shall have the power to hear and determine same. The commissioner shall prescribe appropriate rules and regulations to govern the practice and procedure of such contests. (L. '12, Ch. 82, § 69; Code '15, § 5247)."

Appellees claim, and they were supported in this contention by the trial court as hereafter shown, that appellant Lusk had no such claim of interest in the land in question as would authorize her to bring such contest, and, moreover, that if there was to be a forfeiture or cancellation of the lease the Commissioner must be governed in proceedings directed to that end by § 132-121, N.M.Stat.Ann.Comp.1929, rather than by the statute above quoted. Obviously, appellant's only "claim" of interest must be based upon the fact that she was, simultaneously with initiating her contest, filing her own application to lease the land in question, if the cancellation sought should be had.

Section 132-121, supra provides: "Forfeiture and cancellation of leases. The violation of any of the terms, covenants or conditions of any lease or instrument in writing executed by the commissioner covering state lands, or the non-payment by any lessee of such lands of rental notes, except when lien therefor is enforced as hereinbefore provided in this chapter, shall, at the option of the commissioner work a forfeiture of any such lease or instrument in writing after thirty days' notice to the lessee by registered mail, addressed to his last known post office address of record in the state land office, and to the other makers, if any, upon such rental notes; Provided, if within said thirty days the lessee shall fail to comply with demand made in any such notice, after the expiration of said period of time the other makers upon any such rental note may pay same and have the rights of any such lessee transferred to them. In default of payment of any such note or notes as afore-

said, any creditor of the lessee may pay same and have the rights of any such lessee transferred to him. (L. '21, Ch. 8, § 1, amending Code '15, § 5198)."

Upon appeal to the District court and upon trial de novo, as provided by law, the District court held that the cancellation of the lease attempted by the Commissioner was without right and gave judgment for appellees. Appellant brings this appeal setting up, in substance, four grounds for reversal, viz., (1) that the question involved has become moot since the lease in question expired prior to the hearing in the District court; (2) the court erred in that it failed to make findings of fact and conclusions of law; (3) the court erred in holding that to declare a forfeiture of the lease the Commissioner should have proceeded under § 132-121 N.M.Stat.Ann. Comp.1929, rather than under § 132-181, supra, which was followed, and, (4) the trial court erred in holding there was no subleasing.

Some fifty "exceptions" and assignments or error are set out in appellant's brief, but only four points, as we understand, are argued. These, appellees challenge by motion, and otherwise, as not being, in fact, assignments within the rule governing procedure in such cases (rule XV). While it may be said that neither the "statement of the case" as required by rule XIV, nor the "assignment of errors" as required by rule XV, of Practice and Procedure in the District court, are in the exact form as contemplated by such rules, nevertheless there is a substantial compliance, and the motion to dismiss the appeal upon such grounds is overruled.

We consider first whether the question is in fact moot. Appellee contends that, although the lease had expired prior to the decision, in the District court—and it had, in fact, expired prior to the decision by the Commissioner of Public Lands—that nevertheless, in view of the preference right given under certain conditions, to lessees in good standing, under § 2 of Chap. 42 of Laws of 1937, by which they might obtain a new lease upon the same land for an additional term not exceeding five years, it becomes important to appellant and appellee alike to know whether such lease was at all times in good standing or whether it was subject to cancellation, as the Commissioner attempted. Other rights as between the parties might also depend upon whether the lease had been lawfully cancelled, since occupancy by appellees must have continued.

■ Preference is given by this act of 1937—if a new lease is to be offered to anyone—to the "holder of the existing lease". Notwithstanding the fact that the lease expired prior to the date of the judgment of the District court, in view of such preference right to have a new lease which the law affords to the holder of the existing one, it becomes desirable to determine the question presented. It is not moot.

■ We next consider the question whether the court made findings of fact and conclusions of law, and we find this point not well taken. It is true the trial

court did not observe the rule in this respect about which we have spoken so often, and so plainly; and this court must, with some pains, search the record containing the numerous findings of fact and conclusions of law requested by the parties hereto, as well as the instrument denominated "opinion and decision of the court", to ferret out and determine what are, in fact, the court's findings and conclusions. The opinion, we have said, is not a "decision" as contemplated by the rule. Mosley v. Magnolia Pet. Co., 45 N.M. 230, 114 P.2d 740. The method employed by the trial court was that of adoption as the court's own certain requested findings and conclusions, and denying others, instead of making its own findings and conclusions which we have many times insisted upon. The rule requires the trial judge to make and file his decision "consisting of findings of such ultimate facts and conclusions of law *stated separately* as are necessary to support his judgment, in a *single document;* and that he sign and file such decision in the cause as a part of the record proper. * * *" (Italics ours.) McDaniel v. Vaughn, 42 N.M. 422, 80 P.2d 417. See, also, Mosley v. Magnolia Pet. Co., 45 N.M. 230, 114 P.2d 740, and The Macabees v. Chavez, 43 N.M. 329, 93 P.2d 990.

However, it is clear that all parties accepted, at the time, such findings and conclusions as being in substantial compliance with the rules, though they were not. Appellant clearly recognized the findings and conclusions so incorrectly made, as those of the court, and, under the circumstances, she will not be heard now to complain, although the method employed by the court is not in compliance, and some confusion and much needless work is, by such practice, thus thrown upon counsel and this court.

We are, moreover, constrained to again pass this clear violation of the rule because of another, and perhaps controlling, consideration. We have this day adopted a rule which we trust will accomplish the purpose which all we have heretofore said upon the subject has not achieved. Subsection (7) of paragraph (B-a) of rule 52 of the rules governing District Courts, has been amended so as to now read:

"The decision shall be contained in a single document; provided, that an amended or supplemental decision may be filed in the cause prior to entry of judgment; *and, provided further, that findings or conclusions not embraced in the single document herein ordered, even though appearing elsewhere in the record, will be disregarded; but where the ends of justice require the cause may be remanded to the District Court for the making and filing of proper findings of fact and conclusions of law."*

The italicized portion of the rule above quoted embraces the amendment pertinent to the question before us; and its clear and unmistakable language and the penalty which a violation must invoke will, we trust, command for it uniform respect.

Did any of the transactions between appellees bank and Wilson, and between Wilson and Hall, amount to subleasing in violation of the terms of the lease between

the Commissioner and the bank? The trial court answered this question in the negative. The court found that there was no subleasing; but appellant challenges the findings as not being supported by substantial evidence. But in this appellant is again in error.

■ There is ample evidence to support the trial court's finding that there was no subleasing. It is true, Wilson, and perhaps Hall also, used the land in question in connection with grazing the area within their own private holding; and it is true appellee bank had agreed that, when certain indebtedness was paid to it by Wilson, the lease covering the land in question would be assigned over to him and the bank would release any claim it had thereto. The appellant strenuously contends that the uncontradicted evidence shows payments by Hall and Wilson which could have been in payment for nothing else but for rental from them as sublessees of the lessee bank. The trial court did not so appraise the testimony. It made its findings to the contrary, as we have already observed. There is substantial evidence in support of such findings and here our inquiry must end.

■ It is not a violation of law to assign a lease and thus release state lands thereunder, as collateral security. Appellees claim and the court found, that the transaction between them amounted to an assignment, but with the bank still holding legal title to the lease as security for the payment of other obligations owing from Wilson. The act specifically permits assignments of such leases as collateral security. See Chap. 126, Laws of 1933 as amended, by Chap. 47, Laws of 1935. The fact that appellee bank had not actually executed the written assignment and release to Wilson does not alter the case, and, although the act provides for the manner and method of making such assignments of state land leases, and for the recording in the office of the Commissioner, it does not provide that an assignment made in a manner not in strict compliance with the act shall render the same subject to cancellation. In any event, the Commissioner did not undertake to cancel because of an irregular assignment. The contest was prosecuted upon the ground that there was no assignment, which would be permissible, but a subleasing, which is not permissible, and which would subject the lease to cancellation, under proper procedure.

Whether appellant had such a claim, to a "right, title, interest or priority of claim, in or to" this land as would authorize her under § 132-181 supra, to bring such a contest, or whether the action could have been initiated only by the Commissioner and under § 131-121, supra, we need not decide, since the judgment must be affirmed upon the ground that there was no subleasing as charged.

Finding no error, the judgment is affirmed, and it is so ordered.

BRICE, C. J., SADLER, and BICKLEY, JJ., concur.

ZINN, J., did not participate.